# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00414-CR

**Woodrow Maybin, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 331ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-22-904015, THE HONORABLE JON N. WISSER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant, Woodrow Maybin, challenges his conviction for continuous sexual abuse of young child. Tex. Penal Code § 21.02(b). Maybin was accused of multiple acts of sexual abuse against his four granddaughters.[1] After the jury found Maybin guilty, the trial court assessed punishment at twenty-five years' imprisonment. *Id.* at § 21.02(h). Maybin contends in his first two issues that the trial court erred when it designated two forensic interviewers as the outcry witnesses for two of the child victims instead of those children's mother. Maybin contends in his third issue that the trial court erred when it allowed Maybin's son to testify that CPS had informed him of a "no contact order" that required that Maybin not have any contact with his grandson. In

---

[1] The continuous sexual abuse of young child statute creates one offense that may include allegations of sexual abuse against one or more child victims. *See* Tex. Penal Code § 21.02(b) ("A person commits an offense if . . . during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims).

his final issue, Maybin contends that the cumulative error of the three alleged trial court errors requires reversal of his conviction. We affirm the trial court's order of conviction.

## BACKGROUND[2]

At trial, Maybin's four granddaughters, K.M., M.M., O.M., and A.M[3].—two sets of sisters who are cousins—testified regarding multiple incidents of sexual abuse spanning years and committed by Maybin against each of them personally. The granddaughters also testified to acts of sexual abuse that they had witnessed Maybin perpetrate against one or more of the other granddaughters. The oldest of the granddaughters, K.M., was fourteen at the time the outcries were made and eighteen when she testified at Maybin's trial.

*The Outcry Witness Hearing*

The proper outcry witnesses for two of the granddaughters, K.M. and M.M., were contested by the parties. The State asserted that the proper witnesses were the forensic interviewers who interviewed each child individually. Maybin asserted that the proper witness was the children's mother. The trial court held a hearing outside the presence of the jury to determine the proper outcry witnesses to designate for the sisters K.M. and M.M. It is undisputed that before the forensic interviews took place, their mother spoke to them and asked them if Maybin had inappropriately touched them.

---

[2] We recite only the relevant facts necessary to resolve the presented issues.

[3] To protect the privacy of the minor victims, we will refer to them by their initials and we will refer to their parents by their relationship to the children rather than by name. *See* Tex. R. App. P. 9.10(a)(3).

At the hearing, their mother testified that on Mother's Day of 2018 she asked her daughters if anyone, and specifically if Maybin, had ever touched them inappropriately. She testified that her daughter K.M. told her that Maybin had inappropriately touched her. The mother testified that K.M. did not go into details during that initial discussion but that K.M. spoke about it in more detail after the forensic interview. The mother expressed difficulty remembering exactly what K.M. had told her and explained that it had been four years, that the mother was trying to "move past" the experience, and that the mother had blocked out some of the details so that she "could be the best mother [she] can for [her daughters]." The mother testified that her knowledge of what K.M. initially told her was limited to "it happened multiple times at multiple houses" and "it" meant "touching her in her vagina" but that the mother could not remember if those were the words K.M. used.

Octavia Littles, the forensic interviewer who interviewed K.M. on May 18, 2018—when K.M. was fourteen years old—testified that K.M. told her that there were about six incidents in which Maybin touched her "no-no place" and that they spoke about three of those incidents. K.M. described the most recent incident, which occurred at K.M.'s grandparents' house about three years prior to the interview. K.M. told Littles that while K.M. was sitting with Maybin in a chair looking at photos of cars, Maybin reached under a blanket that was covering her and touched her "no-no place." Littles testified that K.M. also told her about the first incident that occurred. K.M. told Littles that when she was four or five years old, K.M. was sitting in a chair with Maybin while her parents were out to dinner and her grandmother was asleep on the couch. K.M. told Littles that Maybin touched her over her underwear. Littles testified to a third incident that K.M. described to her, which occurred in between the other two incidents. K.M. told Littles that K.M.

3

was sitting next to Maybin watching "NCIS" while her mother and sister were in the kitchen and Maybin touched her "no-no square" over her clothes.

The mother was recalled as a witness and testified that during her initial conversation with M.M. about the abuse, M.M. told her that Maybin had touched her breast that morning. M.M. also told her mother that Maybin had touched M.M.'s vagina over her clothes but her mother did not testify to any additional details, including when the touching happened. The mother testified that the only information M.M. gave her prior to the forensic interview was that Maybin "rubbed her breast and would touch her vagina."

Krista Wold, the forensic interviewer who interviewed M.M. on May 18, 2018— when M.M. was ten years old—testified that M.M. told her about three times that Maybin abused her. M.M. told Wold that the previous weekend while at her father's house, Maybin came into her room, told her to wake up, and licked her breast and her vagina. It is undisputed that the weekend prior to the forensic interviews was Mother's Day weekend. The earliest incident that M.M. could remember was when she was in kindergarten. M.M. told Wold that Maybin was sitting in a recliner, asked her to come sit with him, positioned her so that she was at the foot of the recliner facing him, opened her mouth with his hands, and put her mouth on his penis. M.M. also told Wold about a third incident, which Wold referred to as "the second worst time." M.M. told Wold that she was sitting with Maybin in the living room, that Maybin's penis was out, and that he attempted to put her on top of him. Wold explained that M.M. described that Maybin was attempting to put his penis inside of M.M.'s anus but that M.M. was able to get away.

The trial court designated each forensic interviewer as the respective outcry witness for the child that they interviewed.

*Testimony of "No-Contact Order"*

Maybin's son and the father of O.M. and A.M., testified that in 2018 while he was in the process of adopting his son I.M., he was notified by Child Protective Services (CPS) that there was a "no-contact order" prohibiting Maybin from having contact with I.M.  Maybin objected and argued at trial that the testimony was impermissible hearsay, irrelevant, and barred by Rule of Evidence 403 as highly prejudicial.  The trial court sustained the objection "to anything further than the fact that CPS contacted them and maybe the basic just short reason why" and reasoned that "anything further is not sufficiently relevant to be admitted."

After hearing all the evidence, the jury found Maybin guilty of continuous sexual abuse of young child, and the trial court sentenced him to twenty-five years' imprisonment.

## DISCUSSION

Maybin contends through three issues that the trial court committed reversible error. Maybin's final issue raises a cumulative error claim.

*Outcry Witnesses*

Maybin contends that the proper outcry witness for K.M. and M.M. was their mother because she was the first person the children outcried to about Maybin's abuse.  The State contends that the information that K.M. and M.M shared with their mother was not specific enough to constitute an outcry and that the mother's memory issues regarding her initial discussion with her daughters made the two forensic interviewers the proper outcry witnesses.

We review a trial court's admission of testimony from an outcry witness under an abuse-of-discretion standard.  *Gibson v. State*, 595 S.W.3d 321, 325 (Tex. App.—Austin 2020, no pet.).  A trial court has "broad discretion" in determining who qualifies as a proper outcry witness,

5

and we will uphold the trial court's ruling if it is reasonably supported by the record and within the zone of reasonable disagreement. *See Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990).

Hearsay statements are generally inadmissible. *Martinez v. State*, 178 S.W.3d 806, 810 (Tex. Crim. App. 2005). Article 38.072 of the Texas Code of Criminal Procedure creates a hearsay exception in the prosecution of certain sexual offenses committed against children for the admission of a child's first outcry of sexual abuse to an adult. *See id.* "This witness may recite the child's out-of-court statements concerning the offense, and that testimony is substantive evidence of the crime." *Id.* at 811. To be admissible under Article 38.072, "[t]he statement must be 'more than words which give a general allusion that something in the area of child abuse is going on'; it must be made in some discernible manner and is event-specific rather than person-specific." *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011) (quoting *Garcia*, 792 S.W.2d at 91).

"There may be only one outcry witness per event." *Id.* However, when a child tells a second adult about a different type of abuse than the child told the first adult, the second adult may testify about what the child told them about that different abuse. *Hernandez v. State*, 973 S.W.2d 787, 789 (Tex. App.—Austin 1998, pet. ref'd) (citing *Turner v. State*, 924 S.W.2d 180, 183 (Tex. App.—Eastland 1996, pet. ref'd) (concluding officer could testify to victim's outcry about penile penetration because victim's previous outcry to counselor was about digital penetration)). Additionally, the subsequently told adult may be the proper outcry witness, if the first adult whom the child told cannot remember the child's outcry. *Foreman v. State*, 995 S.W.2d 854, 859 (Tex. App.—Austin 1999, pet. ref'd) ("We interpret the statute to mean that the 'first person' refers to the first adult who can remember and relate at trial the child's statement that in some discernible manner describes the alleged offense.")

6

Here, Maybin contends that the offenses that K.M. and M.M. described to the forensic interviewers were the same offenses they had already told their mother about, just in additional detail. *See Robinett v. State*, 383 S.W.3d 758, 761–62 (Tex. App.—Amarillo 2012, no pet.) ("The proper outcry witness is not to be determined by comparing the statements the child gave to different individuals and then deciding which person received the most detailed statement about the offense."). We disagree. With the exception of the Mother's Day incident, the mother did not testify that she knew any details regarding the timing of the events her children told her about. *See Lopez*, 343 S.W.3d at 140 (explaining "[t]he statement must be 'more than words which give a general allusion that something in the area of child abuse is going on'; it must be made in some discernible manner and is event-specific rather than person-specific"). As the State correctly points out, continuous sexual abuse of young child makes it "an offense if . . . during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims" and the child is younger than fourteen years of age. Tex. Penal Code § 21.02. The mother testified that her children did not give her details. The trial court could have reasonably determined that the mother was not told enough details to describe individual events underlying the charged offense of continuous abuse of young child in a "discernible manner." *See Lopez*, 343 S.W.3d at 140.

The only incident that the mother had any time reference for was the Mother's Day incident. M.M. told her mother on Mother's Day 2018 that Maybin had touched her breast "that morning." M.M. told her forensic interviewer that Maybin licked her breast and vagina when he woke her up during Mother's Day weekend. The trial court could have reasonably concluded that the forensic interviewer was the correct outcry witness for the alleged abuse event regarding licking M.M.'s breast and vagina and that the mother had described a different event—touching

7

M.M.'s breast. *See Turner*, 924 S.W.2d at 183 (distinguishing child's outcry regarding penile penetration from previous outcry about digital penetration).

Further, the mother testified at the hearing that she could not remember exactly what the children had told her, alluded that they had shared more details with her after the forensic interview than they had initially, and testified that she had forgotten and blocked out the details of the events surrounding the offenses committed against her children. The trial court could have reasonably determined that the forensic interviewers were the first adults who could "remember and relate at trial" the children's statements. *See Foreman*, 995 S.W.2d at 859 ("We interpret the statute to mean that the 'first person' refers to the first adult who can remember and relate at trial the child's statement that in some discernible manner describes the alleged offense.")

We conclude that the trial court did not abuse its discretion when it designated the forensic interviewers as the outcry witnesses for K.M. and M.M. *See Torres v. State*, No. 03-99-00485-CR, 2000 WL 1028098, at *3 (Tex. App.—Austin July 27, 2000, no pet.) (not designated for publication) (holding that trial court did not abuse its discretion when it designated subsequent adult told about the abuse when subsequent adult was told the "how, when, and where" through statements that were "quite detailed," while first adults told were only told "yes" in response to asking the victim if defendant had ever hurt her or touched her privates, which constituted only allusion to sexual abuse rather than describing event in discernible manner).

We overrule Maybin's first two issues.

*Testimony Regarding "No-Contact Order"*

Maybin contends on appeal that the trial court erred when it allowed the State to elicit testimony from O.M.'s and A.M.'s father that CPS had contacted him and told him that there

was a "no-contact order" in place prohibiting Maybin from being around I.M. because it was extraneous offense evidence prohibited by Texas Rule of Evidence 404(b). The State correctly points out that Maybin's objections to this evidence at trial did not include a Rule 404 extraneous offense objection. Rather, Maybin argued at trial that the testimony was impermissible hearsay, irrelevant, and barred by Texas Rule of Evidence Rule 403 as highly prejudicial. The trial court generally sustained the objection, with limited exception for the complained of testimony, and stated that any further detail would not be relevant. On appeal, Maybin has filed a reply brief but has not addressed the State's contention that he failed to preserve his Rule 404 issue for appellate review.

To preserve a complaint for appellate review, (1) a party must have made a timely, specific objection, request, or motion to the trial court that stated the specific grounds for the ruling sought by the complaining party, unless the specific grounds were apparent from the context, and (2) the trial court must have either ruled or refused to rule on the request—in which case the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a). "[T]he point of error on appeal must comport with the objection made at trial." *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Preservation of error is a systemic requirement. *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005).

After reviewing the record, we agree with the State that Maybin's Rule 404(b) complaint was not preserved because he did not object on that basis in the trial court. Maybin's general relevancy, Rule 403, and hearsay objections did not preserve any Rule 404 complaint. *See Medina v. State*, 7 S.W.3d 633, 643 (Tex. Crim. App. 1999) (holding that general relevancy objection does not preserve Rule 404(b) issue); *Parmer v. State*, 38 S.W.3d 661, 668 (Tex. App.—Austin 2000, pet. ref'd) (holding that Rule 404(b) issue was not preserved because there was no

9

Rule 404(b) objection, but there was Rule 403 objection made). Thus, we do not address the merits of this issue. *See Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009) ("If an issue has not been preserved for appeal, neither the court of appeals nor this Court should address the merits of that issue.").

*Cumulative Error*

Because we have concluded that Maybin's first two asserted errors were not an abuse of the trial court's discretion, and because we may not review his third asserted error, we conclude that there is no cumulative error in this case. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) ("[W]e are aware of no authority holding that non-errors may in their cumulative effect cause error.").

## CONCLUSION

Because we overruled the first two of Maybin's issues and cannot reach his third, we affirm the trial court's judgment of conviction.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Smith

Affirmed

Filed: August 24, 2023

Do Not Publish

10